No. 893

First Circuit

FONTENOT v. TREMIE ET AL.

(February 8, 1932. Opinion and Decree.)

John W. Lewis, of Opelousas, attorney for plaintiff, appellant.

J. H. Dore, of Ville Platte, and Dubuisson & Burleigh, of Opelousas, attorneys for defendants, appellees.

MOUTON, J. Plaintiff's left eye was severely injured by a bottle thrown at him by Gus Prudhomme in Ville Platte November 30, 1929.

Dennis Tremie and Kossuth Fontenot were companions of Gus Prudhomme at the time of the occurrence, and all three were minors.

Plaintiff, alleging that Dennis Tremie having struck him with a stick immediately before the bottle had been hurled by Gus Prudhomme, that the aforenamed boys, who had designedly committed these acts, were confederates or conspirators, brings this suit claiming $7,500 against

Ferdinand Tremie, Leonce Prudhomme and Adema Fontenot, the fathers of these boys.

Judgment was rendered below dismissing the suit, from which plaintiff appeals.

The difficulty which resulted in the damage occurred at about dusk, according to the witnesses. Plaintiff and Nolan Munier, a boy about eighteen, met Dennis Tremie, Gus Prudhomme, and Kossuth Fontenot at Guidry's pool room or whisky joint in the town of Ville Platte, where liquor was sold to the public.

It seems that Tremie Prudhomme and Kossuth Fontenot, hereafter called defendants, were in a back room of the pool room drinking, or finishing their drinks, when plaintiff and Munier came into the room. At any rate, the proof shows that the five boys met in the pool room; whether plaintiff and his companion came in first or after being an immaterial circumstance.

Plaintiff and Munier say they were sober; defendants, admitting they had had a couple of drinks, testify plaintiff had been drinking or was drunk. These five boys, the record shows, although they did not "bunch" together, as they expressed it, had never had any trouble or difficulty of any kind, and were friendly. It is true that, when they met at the pool room, they did not speak to each other, but it is also a fact that nothing whatsoever occurred there to cause any irritation or ill feeling between them. The proof shows that plaintiff and his companion, Munier, left the pool room to go across a small cane field to a Mr. O'Conner to get a bottle of whisky where he was operating a joint or blind tiger institution.

Munier was the one who was going to buy the whisky, plaintiff following him.

Munier went in O'Conner's home, got the bottle of whisky, plaintiff remaining at the yard gate, so testify plaintiff and Munier. After procuring the whisky, they started on their way back to the pool room, and in the cane field met the defendants, who were also going towards O'Conner's for a bottle of whisky. It is there and then that the difficulty began which ended with the injury inflicted on plaintiff's eye.

"He who is in fault and sues for damages resulting from that fault, cannot recover for the injuries inflicted on him." Bankston v. Folks, 38 La. Ann. 267.

The ruling thus announced governs the issues in this case.

The question presented is one of fact, but the evidence must be analyzed that we may arrive at a proper solution of the case, under the doctrine above referred to.

Plaintiff and Munier say, in substance, that, when they met the three defendants on their way to O'Conner's joint, one of the three defendants asked plaintiff for a drink; that the latter answered he had none; that plaintiff and Munier continued on their way; that defendants hollered at them to stop; that they stopped, defendants came on them; that Tremie picked up a stick, and struck plaintiff on the head with it; that plaintiff caught the end of the stick, Tremie hollered to stab him; and that Gus Prudhomme snatched a bottle from Kossuth Fontenot's inside coat pocket, and struck plaintiff in the eye with the bottle.

The version given of the occurrence by defendants is substantially as follows: That when they met plaintiff and Munier, Tremie asked plaintiff if he had any whisgy left, whereupon plaintiff called Tremie a dirty hog, using also other vile words

which we deem unnecessary to quote; that plaintiff kept on advancing on Tremie with his right hand in his pocket; that he tried to strike Tremie with his hand, which Tremie caught and held; that Munier came up and pulled Tremie down, and that Tremie asked for them to be taken off; that Kossuth took Munier off; and that Gus Prudhomme took plaintiff off from Tremie.

These two versions of the occurrence are clearly contradictory, and irreconcilable. According to plaintiff and Munier, defendants started the trouble, and, according to defendants, it was started by plaintiff.

It is shown that these five boys were well behaved, had good reputations for peace and quiet, and prior to the occurrence in question had had no troubles of that character. It also appears that on the evening in question nothing had occurred at the pool room to disturb their prior friendly relations. There was therefore no cause arising from anger or enmity that could have led to the difficulty.

Plaintiff and Munier say they had not taken a drink, not even from the bottle of whisky which Munier had bought from O'Conner and which he was carrying in his pocket while returning to the pool room with plaintiff, his companion. Defendants admit they were drinking at the pool room when plaintiff came in, and say that plaintiff had been drinking. The judge in his written opinion says in part:

"There is one thing certain, they were all visiting bootlegging joints at the time of the difficulty and were all drinking."

As there was no enmity between these parties, no previous provocation when they met, the only plausible cause for the origin of the disturbance must be ascribed to overindulgence in the liquor they were selling at these whisky joints. In cases of this character arising from such conditions, it is difficult to ascertain with legal certainty from the testimony as to what really happened.

Gus Prudhomme testifies that plaintiff threw a bottle which struck him on the shoulder, that he picked it up at his feet, threw it at plaintiff, striking him on the eye.

Plaintiff contends that the bottle was empty when it hit plaintiff on the eye, as some liquor would have been splashed on him when he was struck. Grounding his contention on the statement of plaintiff that neither he nor Munier had taken any liquor from it after it was purchased from O'Conner, counsel for plaintiff deduces the conclusion that, as the bottle with which Gus Prudhomme struck plaintiff was apparently dry, it could not have been the bottle which was still full in Munier's pocket, and necessarily could not have been any other bottle but one which the defendants were taking over to O'Conner for the whisky they intended to get there.

Admitting that the bottle Munier was carrying in his pocket was full at the time, if it was thrown at Prudhomme, as testified to by defendants, it is not impossible that it was broken when it struck his shoulder and that its contents or most thereof were spilled, the bottle going back to plaintiff without any liquor left or not much to be spared, so as to leave proof of its existence.

In connection with the proof revolving around this empty bottle which plaintiff contends corroborates the testimony of plaintiff and Munier that no bottle was first hurled against Prudhomme, and to the

discussion of which counsel devotes a large portion of his brief, it is proper to refer to the testimony of the three defendants who positively deny that they had with them an empty or any bottle when they left for O'Conner's joint to get whisky, as they claim that bottles were furnished by O'Conner for whisky purchased at his joint, and it may be proper to remark here that there is no evidence in the record contradicting that statement as to the furnishing of bottles by O'Conner to his customers.

Let us, however, accept plaintiff's contention that the bottle by which he was struck was empty, and, as a fact, is corroborative of the testimony of plaintiff and Munier that it was in the possession of Prudhomme when they met, and was not hurled back at plaintiff, as testified to by defendants. If that be a corroborative circumstance, the record also offers a fact which corroborates the testimony of defendants in reference to the manner in which the struggle was carried on during the difficulty.

Defendants say that, when plaintiff attempted to strike Tremie, the latter grappled with him, that Munier pulled him down by his shoulders, thereupon plaintiff and Munier were taken off by Kossuth Fontenot and Gus Prudhomme, as hereinabove alluded to.

Paul Soileau, a resident of Ville Platte, disinterested as far as the record discloses, says, after he had taken his supper on the day of the occurrence, he met the three defendants, and saw that Tremie had mud on his back, knees and shoulders, and was the only one that had any mud on his clothes. This statement corroborates defendants in their testimony to the effect that Tremie had been pulled down during the struggle. If the difficulty occurred as testified to by defendants, plaintiff was the aggressor, and at fault.

In his opinion, the district judge also stated that:

"To grant the relief asked for, the Court would have to ignore altogether the testimony of the minor sons in this difficulty, which the Court does not feel that it is justified in doing."

The minor sons referred to are the three boys named as the three defendants herein. The court evidently concluded from the evidence of the defendants that plaintiff was the aggressor, in fault, and rejected the damages.

The only possible reason upon which counsel for plaintiff could hope to recover is based on the fact that Munier, witness for plaintiff, is no relative of the plaintiff, and has no interest in the outcome of the case. This circumstance is worthy of consideration, but likewise is the fact that the trial judge had the opportunity of hearing the witnesses, and of noticing their deportment on the witness stand, and is also presumed to be informed of the conditions existing in the community over which he presides. These advantages are not possessed by the appellate judges who must derive their information exclusively from the cold facts reflected in the record.

This case being one of fact, the only ground warranting a reversal would be that the court below has fallen into a manifest error in believing the three defendants as against plaintiff and Munier.

From a full analysis of the evidence which has received our closest and most careful attention, we do not find that the court has erred in believing defendants and in rejecting the demand.