### No. 9652.

### S. M. BANKSTON ET AL. VS. CHESTON FOLKS.

He who is in fault and sues for damages resulting from that fault, cannot recover for the injuries inflicted on him, although the perpetrator of them was not justified in law in his own conduct.

In a civil suit for damages for injuries caused by the defendant's shooting the plaintiff, evidence of threats of the plaintiff that he intended to do violence to the defendant, and of their communication to the defendant prior to the shooting, is admissible to shew the impression made on the defendant's mind by the communication.

In such suit the indictment and verdict in a criminal prosecution of the defendant for the offence of shooting the plaintiff are admissible in evidence, not as conclusive of the plaintiff's right or want of right to recover, but as proper to be considered by the jury in determining the issue before them.

APPEAL from the Fifteenth District Court, Parish of West Feliciana. *Yoist, J.*

*W. W. & H. C. Leake* for Plaintiffs and Appellants.

*Wickliffe & Fisher* for Defendant and Appellee.

The opinion of the Court was delivered by

MANNING, J.    S. M. Bankston and his wife sue in behalf of their minor son, Marcus, for $2,793.20 as damages for injuries inflicted on him by Cheston Folks, by shooting him three times with a pistol. Of this sum $2,000 are claimed as exemplary damages, $500 as actual, $250 for lawyer's fee, and $43.20 for doctor's bill and medicines. The shooting was in the public streets of the town of St. Francisville, last August, Marcus being then in his twenty-first year. He was confined to his bed four days, to his room a week, and was kept from work three

weeks. He is a farmer and labourer, rents a few acres of land and works it himself, and says he lost a dollar a day while disabled.

The defence is that the shooting was to protect his own (the defendant's) life and to save himself from bodily harm.

The case was tried by a jury, who refused to give any damages and found for the defendant. A criminal prosecution of Folks preceded this suit, and resulted in his acquittal.

We shall not disturb the judgment.

The testimony conflicts, but it is manifest that Marcus Bankston brought the trouble on himself. He had taken offence because Folks rented a piece of land that he wanted, and yet more "because (to use his own language) you (Folks) ride by me and never speak, and think yourself better and above me." This rankled in his heart, and he often said to others that he would do divers things, such as rub his fist in Folks' face when he next met him, cut his throat from ear to ear, and the like. He even asked his interlocutors to tell Folks what he had said, and they did it.

His own testimony of what he said to one of the witnesses is as follows:

Question. ."Did you not then and there call Folks a damn son of a bitch?" and he answered

"I did, and then I said I will take that back. I said to Collier Carr, 'you tell Folks that he is a damn rascal. He laughed and made fun of me, and I can rub my fist in his face.' And I said, 'no, you need not tell him any of this,' and he said no he was not going to tell him."

Of course this is the most favorable version. Several witnesses assert that he used the coarsest and vilest expressions, and with oaths and threats of what he should do to Folks, and which he requested should be communicated to him. They were communicated to Folks, and if this was done even without the dressing and ornamentation usual on such occasions, the delivery of the messages in their una‾dorned brutality was enough to alarm Folks for his safety. This conversation of Bankston we have quoted above was on Thursday night, and not that version but a very different and more truthful one was told Folks on Friday night. The shooting was on Saturday.

Folks passed Bankston and his party of relatives on the road to the town on Saturday, and bought or borrowed a pistol as soon as he got there. On Bankston's arrival Folks went up to him, Folks afoot and Bankston on horseback, not having alighted, and said: " What have I done to you to cause you to talk about me this way?" Bankston's

reply was: "God damn you, because you ride by me and wont speak to me, and seem to think yourself better and above me." I said, "Bankston you have threatened to rub your fist in my face, and to cut my throat from ear to ear. Is that so?" He said, "Yes, I said it and I can do it." And I said, "Do you feel like doing it now?" And he said, "You can't bluff me."

This is Folks' testimony of what preceded the rencounter. Bankston at that moment put his hand behind him, the movement he would have made if he were about to draw a pistol from his pocket. In fact he had none. Instantly leaning over to one of his party, he reached out and asked for a pistol, and then Folks drew and fired.

The whole affair is a disgrace to any civilized community. Folks should not have armed himself, nor sought Bankston, nor fired. If he apprehended violence from Bankston, his plain duty was to make oath of it before an officer of the law and have him bound over to keep the peace.

But Bankston's threats of violence caused the rencounter and his efforts to get a pistol provoked the shooting, and although Folks was not justifiable in doing what he did, Bankston cannot recover because he was himself in the wrong, and because the difficulty could never have occurred had he not invited it by sending messages to Folks well calculated to alarm him for his personal safety. Vernon v. Bankston, 28 Ann. 710.

Bills were reserved to several rulings of the lower court, of which only two need be noticed. The defendant was asked to state what threats of Bankston were communicated to him prior to the shooting, and by whom were they communicated. The objection was that all statements made to the witness out of the presence of the plaintiff are hearsay, and therefore inadmissible, and the court sustained the objection.

The defendant was the witness. The object was to shew what was the impression made on his mind by the communication of threats and other language of the plaintiff, for it matters not, so far as that object was concerned, whether it was true or false that Bankston had said what was reported to Folks as his saying. The evidence shewed the mental impression of the defendant and was admissible for that purpose. A number of other witnesses had already testified of the threats and their communication.

The indictment and verdict in the criminal prosecution were offered in evidence and rejected as irrelevant. They were admissible. They

were not conclusive of the plaintiff's want of right to recover in a civil action, but it was proper that the jury should consider the result of the criminal prosecution for an offence for the legal consequences of which damages were claimed from its perpetrator. Several witnesses had been interrogated about what they swore on the criminal trial.

These rulings were in favour of the plaintiff, notwithstanding which the defendant had a verdict and judgment.

Judgment affirmed.