BREAUX, C. J.
Plaintiff instituted this suit to recover $3,000 damages for personal injuries he claims to have suffered at the hands of defendant.
Plaintiff is a negro farmer, about 50 years of age. He owns a small farm near defendant’s plantation and a few head of cattle. He branded a heifer, which defendant claimed was his own.
While plaintiff was on defendant’s place, the question arose about the ownership of the heifer. Each claimed to be its owner. Something was said by plaintiff about a compromise, to which defendant declined to listen. He characterized in strong words the action of the plaintiff in having branded, as he said, his heifer.
Plaintiff brought suit before the magistrate’s court for the animal. After the usual citation and delays, the ease was called for trial before the court, held in a room occupied by the justice of the peace. The room was small. It measured 20 by 30. In the room there were wagon and buggy spokes, to which reference was made by the witnesses.
Plaintiff was represented by a lawyer. The defendant was not. He appeared in his own defense. The plaintiff was sworn and testified in his own behalf. He was examined in chief, and after the examination defendant was informed that he was at liberty to cross-examine the witness. Defendant turned to plaintiff and asked him, substantially, if he had not acknowledged to him in his store that he had branded his heifer in mistake and that he would compromise, to which question defendant answered, in substance, that he had made no such offer. The question was propounded a second time. The witness in an emphatic manner answered that he had not.
As the last denial was made, defendant struck the witness with a stick which he had in his hand. Blood was made to flow. The plaintiff fell under the table near which he was seated while he was testifying. There were a number of blows inflicted. Others added to the disturbance by making use of the spokes, which became effective in the hands of one or two of the white persons present. »
The charge on the part of the defendant was that plaintiff had gathered a number of negroes, who were present at the time of the trial, and substantially the contention is that plaintiff availed himself of the opportunity to answer in an insulting manner.
The magistrate and the constables who were present, and all the other witnesses for the defendant, testified to the insulting attitude of the plaintiff. This is positively denied by plaintiff and by the attorney of plaintiff. The other witnesses for plaintiff do not agree with the statement of defendant’s witnesses in this particular.
After the disturbance, defendant offered his apology to the court. He was fined $10 for contempt.
An appeal was taken to the district court, and judgment rendered for defendant, decreeing him to be the owner of the heifer.
The judgment of the magistrate was affirmed on appeal, and defendant was decreed owner of the heifer.
On the day .that the case was tried before the magistrate, defendant made an affidavit against plaintiff, charging him with theft. Afterward this affidavit was considered by the grand jury, and that body did not find a true bill.
An indictment was found against defendant for assaulting plaintiff, short of maiming him, while the case was being tried before the magistrate’s court.
Defendant pleaded guilty to this indictment, and was fined $25, and costs.
The plaintiff, as before stated, instituted this suit to recover damages for personal injuries.
*135 He alleged that he had been made to suffer by the blows inflicted by defendant, as before mentioned.
The case was tried before a jury, and they found for defendant, and rejected plaintiff’s demand.
The defendant surely brought on the trouble by striking the plaintiff on account of a real or fancied insult growing out of the denial of the plaintiff in answer to a question propounded. Whether the most severe blows were inflicted by defendant or by some one else standing near, as some of the evidence tends to prove, does not make the greatest difference. Unquestionably the first blow was struck by defendant, and he was the principal mover in the assault and battery committed, to which he has pleaded guilty. It is evident enough that, if the defendant had not made use of his stick and inflicted blows, there would have been no trouble. The court’s session would not have been interrupted.
The explanation given for the plea of guilty pleaded by defendant in answer to the indictment against him was not entirely plain. The reason given is by no means conclusive. The desire to save time, as he stated as a witness, and to avoid .employing counsel, as stated by defendant, is hardly justification. He has pleaded guilty, and that is all there is about the matter.
No one should employ counsel, unless he deems it proper. That is a personal matter, in regard to which we have naught to say; but no one should plead guilty to any offense unless he is guilty, as it should suggest itself to him that perhaps he might have to prove that he had committed an error in thus pleading, or that he might have to show that for some very good reason he should not be held bound by the plea.
In this defendant seems to have failed, for we have not found that there was error in the sentence of the court in imposing a fine upon the plea of guilty which defendant had entered upon the minutes.
The testimony is direct enough, and proves beyond question that defendant did strike the plaintiff, as before mentioned. Evidence may be considered in mitigation of damages',, but not in justification; for the defendant was not justified in striking a witness in open court, while he was under cross-examination by himself. The rules of evidence do not sanction any such extraordinary manner of conducting an examination. The argument ad hominem has no place in a court of justice. A patient and painstaking hearing should be given by the court to the testimony of witnesses. The person testifying should be entirely safe from all assault. This would not be the condition if for any cause the witness is to be subject to blows. He is under the court’s protection. If his demeanor is not proper, it is for the court to admonish him, and, if necessary, to inflict such penalty as the occasion demands. A cross-examiner cannot be heard to justify his blows because the cross-examination takes an annoying turn. The attempt at impeaching was, to say the least, novel. It' was in direct contravention to the dignity and discipline which should prevail in a court, however limited its jurisdiction, and entirely inconsistent with the protection due a witness while testifying.
There is some element of kindness in the law for the infirmities of human nature, which at times acts hastily and without restraint. But, • while taking account of these sudden outbreaks of temper, the law cannot have sympathy with acts of violence, which go as far as the defendant did in the violation of personal rights.
There are, we must say, mitigating circumstances, which will be considered in fixing the amount of damages. Among these circumstances the smallness of the room in which the witnesses and the curious were *137 assembled may, to some extent, be taken into account. The room must have been taxed to its utmost capacity. Defendant states that there were about “15 whites” present and about “45 negroes.” That number of persons in a room 20 by 30 was enough to cause some irritation, at least.
Immediately after the occurrence, one of the I-Iamites, who was in the room, was met on the street by one of the witnessés in the present case. He had a short wheel spoke in his hand. To the inquiry as to what was the matter with him, he replied, in substance, that he did not know himself. He had been struck by some one whom he did not know (not the defendant), and added that he deserved it; that he should not have gone to the room at all. We are not inclined to kindle fuel and fan this occurrence into a matter of some moment. It was a sudden break; an outburst of temper on a warm day in August.
This brings us to the question of damages, as to the amount which should be allowed.
It was admitted that the attending physician, if present, would testify that on the day in question the plaintiff called on him at his office, and upon examination he found a slight laceration of the skin and muscle of the forehead, which he dressed four or five times, and which laceration healed in about five or six days; that plaintiff came to his office for each dressing, and never showed any sign of suffering; that there could be no possible bad effect from such slight bruises; that they were not such as to prevent him from working.
During the trial, plaintiff, through counsel, sought to impeach the testimony of defendant by asking the witness if he had not stated that he would not have struck the plaintiff, but he had taken a glass or two too much, and that he was just feeling right, to which defendant, as a witness, replied that he had said no such thing.
On rebuttal, for the purpose of impeachment, a witness was called to prove the contrary of defendant’s answer.
Plaintiff’s counsel objected that sufficient foundation had not been laid to impeach the testimony; that no time was given, and no mention of persons present.
It does not appear that witness had been sufficiently warned of the intention to examine witnesses to impeach his testimony.
The purpose of the rule is to prevent surprise.
We think in this instance, that the testimony was properly excluded. Moreover, plaintiff has not called upon this court to remand the case to admit the testimony.
For these reasons, it is ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled, and reversed.
The law and the evidence being with plaintiff, it is further ordered, adjudged, and decreed that plaintiff do have judgment against the defendant for the sum of $500, with legal interest from the date of this judgment and that defendant pay the cost of both courts.