(71 South. 395)

No. 20407.

BURNECKE v. O'NEAL et al.

(March 6, 1916. On Application for Rehearing, April 3, 1916.)

*(Syllabus by the Court.)*

ASSAULT AND BATTERY ⚖⇒2—CIVIL LIABILITY.

Damages will be allowed where the preponderance of evidence shows that defendant destroyed the sight of one of plaintiff's eyes by a blow of the fist, and that there was not provocation for the assault.

[Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. § 1; Dec. Dig. ⚖⇒2.]

O'Niell, J., dissenting.

Appeal from Second Judicial District Court, Parish of Bossier; J. N. Sandlin, Judge.

Action by A. C. Burnecke against J. B. O'Neal and another. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

Murff & Roberts, of Shreveport, for appellant. Hall & Jack, of Shreveport, and Joannes Smith, of Benton, for appellees.

SOMMERVILLE, J. Plaintiff sues defendants, husband and wife, for damages in the sum of $6,000, for willfully and maliciously beating him in the face and eyes; and for the loss of the sight of his left eye.

Defendant O'Neal answers that plaintiff provoked the attack upon him by calling him a damned liar in the presence of his (defendant's) wife. He admits having shoved plaintiff down twice, and having beaten him once with his fist, all on the spur of the moment of this sudden provocation. Mrs. O'Neal did not answer.

There was judgment in favor of the defendant O'Neal, and plaintiff has appealed.

The trial judge, in his reasons for judgment, says that:

The "plaintiff has lost the use of his eye, and that it is a permanent loss cannot be denied. * * * As to who provoked the difficulty, or what caused the injury to the eye, will to a great extent have to be shown by the evidence of the plaintiff. The question then arises: Is he worthy of belief? The record shows that he has been convicted of the crime of obtaining money under false pretenses, and quite a number of witnesses testified that his character is such that he is not worthy of belief. * * * Taking into consideration the evidence relative to the character of the plaintiff as to his truthfulness, and the number of difficulties he has engaged in, it is easy to believe the statement of the defendant that the plaintiff started the row in which he received the blow. Before the plaintiff would be entitled to recover it would be necessary that he prove by a preponderance of the evidence that the defendant caused the injury complained of, and also that he (the plaintiff) was free from fault in provoking the difficulty; this the court does not think he has done."

There were but two witnesses to the fight, other than the participants. The wife of the defendant, who witnessed it, who did not testify; and the only disinterested witness was a carpenter in the employ of the defendant at the time of the difficulty. He witnessed the entire affair, except for about a minute when he left the store of the defendant where the fight took place.

The testimony of the plaintiff and the defendant agrees as to the origin of the difficulty. It appears that they had had some money transaction, amounting to about $100, and that plaintiff was in the store of defendant to pay the last $5.50 due on that debt. At that time, defendant charged plaintiff with having violated a contract between them not to open another establishment like the one which he (the defendant) had bought from him, or to work for any other person in a similar establishment within a certain period. Plaintiff denied the accusation, and defendant insisted that he had violated the contract and threatened him (the plaintiff) saying:

"I can prove you are the biggest rascal in the whole country. * * * I had just as soon give you a mauling as not."

The defendant testified to the use by plaintiff of the opprobrious epithet set forth in the answer, and plaintiff denied that he had used it. The plaintiff was, in his denial, corroborated by the only witness to the fight who testified on the trial. This witness says that if the epithet was used that he did not hear it, and that he would have heard it if it had been used; that he was absent for only one minute from the room, and defendant testified that the epithet was not used at that stage of the quarrel. So that the preponderance of the evidence shows that the epithet was not used. And, even if it had been, it was not sufficient to have justified defendant in beating plaintiff in the way that he beat him. Plaintiff was an old man, weighing about 125 pounds, and was maimed in both hands. He was not prepared to fight the very vigorous man that the testimony shows the defendant to be, weighing about 180 or 190 pounds, and he begged to be permitted to leave the store without fighting. He carried some money in one of his hands with which to pay his debt to defendant at the time he was knocked down and beaten. This fact would go far to show that he had not assumed a threatening attitude towards defendant.

It is quite clear that plaintiff was attacked by defendant without sufficient cause or provocation, and in the manner testified to by plaintiff, as corroborated by a disinterested witness. The plaintiff's statement is therefore entitled to be believed.

It is true that the evidence shows that the plaintiff had drawn a check on a bank where he had not sufficient funds to meet it, and that he had been convicted for so doing in the criminal court. The evidence also shows that he had many enemies, and had had

many difficulties. But these things are not sufficient to justify defendant in beating him. The state and certain individuals had punished him for the commission of those offenses.

The witnesses called by defendant to testify that plaintiff's reputation for truthfulness and veracity was bad in the community in which he lived were unable to give the names of but very few persons who had been heard to discuss the reputation of plaintiff. It was not sufficient to discredit his testimony, particularly where it was corroborated by a disinterested witness.

Will Whisenant was the name of the only witness to the fight. After detailing the wordy discussion between the parties, he says that Burnecke fell among some dishes. Defendant said that he pushed Burnecke among them. He further testified:

"O'Neal went on him, run between me and Burnecke, and bent over him and beat and knocked him around there; could not swear how many licks he hit him; might have hit at him and missed him. * * * But from the looks of the old man, he hit him; from the blood on his face, I suppose he had been hit. Mr. Burnecke was trying to get up and O'Neal had hold of him, and he either got up or he pulled him up, and he threw him around towards the door, and as old man Burnecke fell, he fell forward and O'Neal kicked at him, and I followed them up. Mr. Burnecke fell on the screen door, and O'Neal run up and got down over him again and was hitting at his head, and I ran up behind O'Neal and grabbed him, as I saw there was no fight to it. I did not like to see a one-sided thing, and told O'Neal—I says, 'Quit; you have done enough; you give him enough.'"

The witness was asked:

"Did you see Burnecke strike him or try to do him any harm? A. No, sir; nothing, only when O'Neal went up to him in the front door he threw both hands up."

And again:

"Q. When you took O'Neal off of Burnecke, what did Burnecke do? A. Burnecke got up and wiped his face, and I turned around and followed O'Neal around the counter and took the ring off of his finger."

The ring, according to O'Neal, was of gold and a fraction over a quarter of an inch in width. The witness testified that the ring had cut into O'Neal's finger. O'Neal says that the ring cut Burnecke in the forehead.

O'Neal, in answer to questions, answered:

"Yes, sir; pushed him down twice. It may be possible that I pushed him down three times; I know twice. I know the third time he tried to get up he kicked and struck me, and I struck him over the left eye, and this ring cut a gash over the left eye. I stood and looked at it good. * * * I hit him one lick with my right hand above his eye, and Whisenant came up. If he had left me alone, I do not think there would have been any case in court; * * * I would have given him a plenty, and he never would have bothered me; he needed a whipping."

Immediately after the fight, plaintiff consulted a specialist, who examined his eye. The latter stated that he saw that the eye was bruised and bloodshot, and that the lens was displaced, or floating in the eye. That he treated plaintiff's eye, but was never able to restore the sight. That the eye is permanently disabled, and the sight destroyed, though the ball does not show any injury or defect to the common observer, except that the cornea, or center of the eye, is very much enlarged, and discoverable easily on close inspection. He would not say whether the injury to the eye, that is, the dislocation of the lens, was of recent occurrence or not. He said that there was nothing in the eyeball that showed that the dislocation had been recent or had not been. Further, such an injury could have been produced by a blow about the eye, or by any violent striking of the head on or near the eye.

The evidence is clear that defendant struck plaintiff in the eye and drew blood, and that the blow was sufficient, especially with the heavy gold ring on the small finger of the defendant's hand, to have injured the eye in the manner testified to by the physician and plaintiff.

Defendant offered some testimony going to show that prior to the difficulty plaintiff had complained of one of his eyes, and that one

eye was partially closed at that time. But there is no testimony in the record going to show that plaintiff was blind in one eye before the assault made upon him by the defendant. The conclusion is irresistible that defendant destroyed the sight of the left eye of the plaintiff by striking it with a forcible blow, without sufficient cause for having done so. He is therefore responsible in damages to plaintiff.

The eyeball is in place, and the defect in it is not discoverable by a casual observer, but the real value of the eye is destroyed. Plaintiff was 68 years of age at the time of the trial, of a weak physique, and crippled in his hands. The damages to him by defendant will be fixed at the sum of $3,000.

It is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there be judgment in favor of plaintiff and against defendant in the sum of $3,000, with interest from the date of judgment, and costs in both courts.

See dissenting opinion of O'NIELL, J., 71 South. 397.

### On Application for Rehearing.

PER CURIAM. The court having observed that a nonsuit had been entered as to Mrs. O'Neal, codefendant, the judgment was rendered against J. B. O'Neal, represented by his executrix, Mrs. Edith O'Neal. Rehearing refused.