### WALSH v. SCHRINER.*

#### No. 16377.

Court of Appeal of Louisiana. Orleans.

June 1, 1936.

Geo. Piazza, of New Orleans, for appellant.

Porteous, Johnson & Humphrey, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for damages based upon an alleged assault and battery. There was judgment below for plaintiff in the sum of $200, and defendant has appealed.

The record discloses the following facts: Some time prior to November 25, 1935, Murray A. Walsh, the plaintiff, took up his residence in a room on premises occupied by Charles L. Schriner as a "one-man foundry." According to Schriner, Walsh was allowed to live on the premises as an act of charity and, in order that he might not be disturbed in his possession of the premises, was given a writing signed by Schriner as follows: "I rent you the room on No. 800 South Cortez Street, you to have full charge of it—if work will justify, I will pay you $1.00 each week."

Walsh contends that he was employed by Schriner as a night watchman at $1 per week. We are inclined to disagree with Walsh, but the point is not important. The relations between Walsh and Schriner became unpleasant, due, perhaps, to the misunderstanding concerning the paper which Schriner had signed, and Walsh, evidently believing that there was $20 due him, called up Mrs. Schriner in an effort to collect the money, and, so Mrs. Schriner testified, threatened her with harm if the money was not paid. Schriner, on November 25, 1935, upon being informed by his wife of the telephone conversation, determined to put Walsh out of the room and went over to his foundry for that purpose. An altercation ensued, during which Schriner's wife was alluded to by Walsh as a "God-dam liar," whereupon Schriner struck Walsh in the face with a flashlight which he had in his hand, drawing blood.

There were three witnesses to the occurrence, the two participants and an employee of Schriner by the name of Teddy Panter. Panter, though introduced by the plaintiff as his witness, corroborated Schriner's version of the occurrence. Both Schriner and Panter testified that just before the blow was struck Walsh raised his hand menacingly, and they are, in a measure, corroborated in this respect by the plaintiff, for he admits that he raised his hand, but claims that it was merely for the purpose of "combing my hair back." Plaintiff also admits the use of the epithet concerning the defendant's wife, justifying himself upon the ground that Mrs. Schriner was mistaken in telling her husband that he had

threatened her. Walsh also testified that Schriner carried a pistol in one hand and a flashlight in the other, ordering him to get out of the room by the time he counted three or he would be shot. Schriner and Panter denied that Schriner had a gun.

In our opinion, the record clearly indicates that the plaintiff was the aggressor. The testimony preponderates to that effect. It may be that defendant was in an excitable state of mind when he entered plaintiff's room and that he was determined to put him out, perhaps by force if necessary. Whatever his state of mind might have been, however, there is no indication of belligerent or aggressive action until plaintiff applied the epithet to defendant's wife. Perhaps the defendant believed that the raising of the plaintiff's arm was an indication that plaintiff intended to strike him, and, if so, would be justified as a matter of self-defense in striking first, but we do not deem it essential, to exonerate a defendant in an action for damages, that there should have been a belligerent gesture or a blow. It is sufficient, in our opinion, that the plaintiff should have been the aggressor and his aggression may be shown by threats, insults, or abuses, as well as by blows and hostile attitudes.

In Finkelstein et al. v. Naihaus et al. (La. App.1933) 151 So. 686, 688, the court said: "We believe, as did our learned brother below, that Mrs. Finkelstein was the aggressor, and, therefore, plaintiffs cannot recover, for the law is clear that, where plaintiff provokes a difficulty by insults, abuse, threats, or other conduct well calculated to arouse the resentment or fears of the defendant, plaintiff is not entitled to recover." (Numerous authorities.)

The following appears in Vernon v. Bankston (1876) 28 La.Ann. 710: "The jurisprudence of this State is well settled that one who is himself in fault can not recover damages for a wrong resulting from such fault, although the party inflicting the injury was not justifiable under the laws."

See, also, Bankston v. Folks (1886) 38 La.Ann. 267, and Massett v. Keff (1906) 116 La. 1107, 41 So. 330, 332. We quote as follows from the latter: "He was therefore the offender and aggressor, from beginning to end, and his case falls within the doctrine that he who is in fault, and sues for damages resulting therefrom, cannot recover for the injuries inflicted on him,

although the perpetrator was not justified in law in his conduct."

To call a man's wife a "God-dam liar" is an insult considered, we believe, by most men as transcending almost all forms of personal abuse. It is highly provocative, and well calculated to incite violent resentment. One who uses such epithets must intend to start a fight. The fact that his opponent strikes the first blow does not alter his character as the aggressor.

It follows that the judgment appealed from is erroneous. Consequently, and for the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment herein in favor of the defendant, Charles L. Schriner, dismissing plaintiff's suit at his cost.

Reversed.