## LANDRY v. HIMEL.

### No. 1748.

Court of Appeal of Louisiana. First Circuit.

Nov. 6, 1937.

C. A. Blanchard, of Donaldsonville, for appellant.

C. V. St. Amant, of Donaldsonville, for appellee.

OTT, Judge.

The suit is for damages in the sum of $2,257.25 on account of an alleged assault and battery on plaintiff by defendant, on July 31, 1936. Plaintiff is the daughter of defendant. She is 32 years of age, married, but separated from her husband, and has two sons, one about 11 and the other 9 years of age.

Plaintiff alleges that defendant struck her with his hands and fists on the side of her head, face, and neck, knocking her down, and bruising her face, head, and neck to the extent that she was compelled to see a doctor on three occasions thereafter; that her face, head, and neck were badly swollen, causing severe bodily pain for a period of 15 days thereafter. She sues for physical pain, humiliation, mental anguish, and physical fear, as well as medical expenses and attorney's fees, on account of said assault and battery.

Defendant admits that he slapped plaintiff, but avers that he was provoked in doing so, and says that the slapping of his daughter was the culmination of a long series of abuses, insults, and disrespectful acts on

the part of his said daughter; that on the date when he slapped her his patience had become exhausted, and when plaintiff again abused, provoked, and irritated him, and advanced toward him in a hostile manner, he could no longer stem the resentment in his heart, and slapped plaintiff solely with a view of bringing her to a realization of her obligation to respect and honor her father.

There was judgment below rejecting the demand of plaintiff. She has appealed.

■ The record is replete with incidents between this grown daughter and her father showing a feeling of ill will and animosity between them for a long period of time. The evidence shows, and her attitude indicates, that plaintiff is a highly nervous, excitable, and high-tempered woman. Taking only the things which she admits telling her father on various occasions, the conclusion is inescapable that she frequently irritated and abused him, and failed to show the honor and respect due a parent by a child, whatever his age, required by both the civil and the moral law. Article 215 of the Civil Code provides that a child, whatever be his age, owes honor and respect to his father and mother. This rule of the Civil Law is founded on the Mosaic law, expressed in the Fifth Commandment, to honor thy father and mother. It is true this command implies that the father and the mother will conduct themselves toward their children in such a way as to merit honor and respect from them. But the first duty is on the child.

■ There was considerable evidence introduced, over the objection of defendant, going to show that on two or three prior occasions the father and the daughter had engaged in a wordy controversy in which more or less abusive and disrespectful language was used by both. This evidence was admissible under the pleadings to show the state of mind of the defendant when he slapped plaintiff, and in order to show the effect of the provocative words used by plaintiff on that occasion.

Some ten months prior to the assault and battery, at the home of plaintiff's aunt, who was then at the point of death, plaintiff and defendant exchanged some scathing remarks, and from what plaintiff admits saying on that occasion, her words and attitude toward her father were rather insolent and irritating, even though the attitude of defendant toward his daughter was not what it should have been. It would not be enlightening to repeat here what both plaintiff and defendant claim was said by each on that occasion. Suffice it to say that both left that wordy affray with more animosity toward the other than had existed between them before.

Again in the early part of June, 1936, another incident took place that added more fuel to the flame. Defendant owned some hay which was stored in a barn or shed near the house where plaintiff lived. The door to the shed had been left open by some one, and the cattle owned by plaintiff and the estate of a Miss Thibodaux, which estate plaintiff claims to have been looking after, got into the hay and ate up most of it. It appears that defendant, on the second day, asked his daughter why she did not close the door to keep the stock out, and after some further bandying of words, plaintiff told her father that she did not give a d—— about his hay.

On July 31, 1936, defendant went with his two grown sons to the house where plaintiff was living, which house seems to have been in some kind of litigation at the time, but belonged to defendant's wife and some of her relatives. Defendant's purpose in going there on this occasion was to get a plank which was somewhere in the back yard. Just what occurred on that occasion is not very clear, as the evidence on this point is very conflicting.

According to plaintiff, when her father picked up this plank in the back yard, she said to him, "Papa, you ought not to take that lumber, it doesn't belong to you," to which he replied, "It is mine, and I am going to take it, it is on my place." According to plaintiff, defendant then asked her about getting some woman who was staying with plaintiff to move out of the house. This she refused to do. Further words followed, and defendant then came onto the porch where plaintiff was and slapped her from one side of the face to the other, and on the side of her head; that he pushed her into the kitchen and there beat and cursed her, knocking her down; that she then got up and ran out of the house into the gravel road, followed by her father, who hit her again. This account of the occurrence as given by the plaintiff is corroborated in the main by her two minor sons.

The version of the occurrence given by the defendant is quite different. He says that when he went into the yard to get the lumber, he did not say anything to his

daughter; that she came out of the house toward him, fussing and acting like she was going to hit him; that he then slapped her once or twice with his hand. His testimony continues:

"Q. Where did that happen? A. Right in her yard, where she was staying on my property.

"Q. She was on the back porch? A. Yes, sir.

"Q. Where was she when you entered the yard? A. She stepped out on the gallery.

"Q. Then what she do? A. She told me I couldn't get that wood.

"Q. Did she leave the porch? A. Yes, got on the steps, and come in the yard to meet me.

"Q. She came into the yard to meet you? A. Yes, she was fussing.

"Q. Was she angry? A. It look like she could have eat me with her eyes, that's what she would have done if she could."

Defendant denies that he struck plaintiff in the kitchen or on the road, but does admit that he followed her into the house and out to the road. His explanation as to why he followed her into the house and out to the road is that he wanted to show her that he could take the wood, and that as he was her father, he thought he could follow her.

Two grown sons of defendant were present, and they each testified that plaintiff came out of her house, and started the row with their father, and used very abusive language towards him; that she raised her hands in a threatening manner, and used insulting and abusive language toward their father, who slapped plaintiff only once or twice in order to make her desist. Another eyewitness corroborated, in the main, the account of the incident as given by these two sons and their father.

We agree with the trial judge that the plaintiff began the controversy when she came out of her house and began upbraiding and insulting her father, gesticulating with her hands in a threatening manner in front of his face. With this insulting and provocative attitude on the part of his daughter, it is hardly to be wondered at that the defendant could no longer restrain himself, and slapped this high-tempered and disrespectful grown daughter. The fact that he used only such force as was reasonably necessary is shown by the fact that he did not hit her with his fist, but only slapped her with his open hand. He had the plank in his hand, but threw it down and made no effort to use it in repelling the advances of his threatening daughter.

Plaintiff undertook to exaggerate her injury by stating that she had bruises on her face, head, and neck; that her face, head, and neck were swollen from the beating which she received at the hands of her father. Yet her doctor, who saw her the day after the incident, found no bruises or swollen parts on her face, head, or neck, but only found plaintiff in a highly nervous condition.

Where a plaintiff provokes a difficulty by insults, abuse, threats, or other conduct calculated to arouse resentment or fear on the part of the defendant, the plaintiff cannot recover for an assault and battery, although the defendant may not have been justified in law in his conduct. Finkelstein et al. v. Naihaus et al. (La.App.) 151 So. 686; Walsh v. Schriner (La.App.) 168 So. 345; Massett v. Keff, 116 La. 1107, 41 So. 330; Johns v. Brinker, 30 La.Ann. 241.

If the defendants in the cited cases were not liable in damages for assault and battery because of provocation, where the provocation consisted mostly in insulting words and threatening attitudes, we think the provocation of defendant's own daughter in her insulting words and threatening attitude toward her own father should relieve him of liability for damages, particularly in view of the fact that her previous attitude toward him had been such as was calculated to prey on his mind and render him more easily provoked.

For the reasons assigned, the judgment is affirmed.