## RANDALL v. RIDGLEY.*
### No. 17031.

Court of Appeal of Louisiana. Orleans.
Jan. 10, 1939.

Edw. M. Heath, of New Orleans, for appellant.

de Lesseps S. Morrison, of New Orleans, for appellee.

WESTERFIELD, Judge.

Richard Randall, a young negro, was shot and wounded by Emanuel Ridgley. He brought this suit for damages in the sum of $22,854.80. The trial judge rendered judgment in plaintiff's favor for $750 and defendant has appealed. Plaintiff has answered the appeal and asked for an increase in the amount of the award.

Ridgley is the proprietor of a barroom, restaurant and dance hall, catering to the patronage of negroes, on the corner of Magnolia Street and Louisiana Avenue. At about 11:30 p. m., on January 27, 1936, Randall, accompanied by John Moton and Sophia Bennett, entered Ridgley's establishment, more or less under the influence of liq-

*Rehearing denied Feb. 6, 1939.

uor. He approached a young negress known as "Peaches" and asked her to dance with him. "Peaches", for some reason—perhaps because he was drunk—declined to dance with Randall. Her refusal stimulated his desire, and as a means of persuasion, he took hold of her hands and began bending her fingers back. She appealed to Ridgley and Ridgley ordered Randall and his companions to leave his place, which they did, either with or without—the testimony is not clear on this point—the assistance of Ridgley. After being ejected, Randall and Moton remained in the parking lot adjacent to the Ridgley establishment and created a disturbance by cursing and reviling Ridgley, who was also present; whereupon Ridgley went into his saloon and obtained a revolver and, according to Ridgley, fired at the ground, but in some manner shot Randall in the penis. The statement of Ridgley to the effect that he did not intentionally wound Randall was accepted by the learned judge, a quo, who stated, in his reasons for judgment: "I don't believe that he (Ridgley) intended to shoot Randall, but as a fact he did shoot him, and he shot him when Ridgley's life was not in danger and when Randall was not attacking him."

It is difficult to understand how Ridgley could have shot at the ground and hit Randall, but we do not regard the matter as important, for, in either event, the question is whether the situation warranted the use of firearms. Whether Randall was wounded as a result of Ridgley's carelessness, or by deliberate purpose, he would be entitled to recover the resulting damages.

Defendant relies upon the principle of law long recognized in this state to the effect that one who is himself in fault cannot recover damages for a wrong resulting from such fault, although the party inflicting the injury was not justified under the law. Vernon v. Bankston, 28 La.Ann. 710; Johns v. Brinker, 30 La.Ann. 241; Bankston v. Folks, 38 La.Ann. 267; Miller v. Meche, 111 La. 132, 35 So. 491; Massett v. Keff, 116 La. 1107, 41 So. 330.

It must be conceded that Ridgley was justified in ejecting Randall from his barroom and that he could justifiably use whatever force might be necessary to accomplish this result since Randall was creating a disturbance and annoying one of his patrons. But Randall and his companions were out of the barroom and in the parking lot adjacent to Ridgley's place of business when the shooting occurred. They were, no doubt, in a

resentful mood and were quite likely denouncing Ridgley by the use of opprobrious epithets, but no blows were struck, nor was there anything to indicate that Ridgley was in any danger of bodily harm. The use of firearms in this situation was unwarranted.

In Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456, the court, in considering a similar situation, after referring to the well-established doctrine to the effect that the aggressor cannot recover, said [page 457]:

"Under no theory can it be said that defendant was warranted in using any greater force than was necessary in ejecting plaintiff from the premises. Defendant is heavier and a more powerful man than plaintiff, and, when he seized him to put him out, plaintiff did not fight back, offered no resistance whatever. If the injuries of which plaintiff complains had been inflicted during the process of ejection, the rule invoked by defendants might, perhaps, have application.

"But they were not. Plaintiff's injuries resulted from the assault which Goldenberg made upon him after he was ejected and after the necessity for physical force (if ever any was necessary or justified) had ceased."

We realize that the position of a proprietor of an establishment such as Ridgley conducted, in dealing with obstreperous patrons surcharged with liquor, is a difficult one, and not free of danger to life or limb, when the passions of angry and intoxicated men are inflamed by a sense of injury. But such unhappy incidents are inherent in that character of business and must be anticipated by the proprietors of such establishments. Of course, Ridgley was not obliged to tolerate Randall's misconduct, nor to permit him to remain in his place of business to the annoyance of his female patrons. Randall had no business to press his attentions upon "Peaches" beyond the point where they were agreeable to her and the use of violence in bending back her fingers in an effort to induce her to reconsider her refusal to dance with him was an act of aggression which Ridgley, as the proprietor of the establishment, when appealed to by his customer, "Peaches", had a perfect right to resent and suppress by whatever means were necessary to eject Randall from the premises. If Randall had resisted, "shown fight", or assaulted Ridgley to the extent of inflicting great bodily harm, or if Ridgley had

reason to believe that he would be seriously injured or that his life was in danger, he would have been justified, if all other less violent means failed, in using his pistol.

But this case presents no such aspect. Randall had been ejected successfully and, while he was noisy and abusive and otherwise obnoxious, Ridgley had no need for and was not justified in using his revolver even for the purpose of scaring him away from the parking lot by shooting at the ground, when Randall was so near him, as to be hit by inadvertence.

In American Jurisprudence, Vol. 4, verbo "Assault and Battery", Section 51, p. 153, we find the following: "A person defending himself from an attack becomes liable as an aggressor where the force employed is in excess of that which the law will tolerate in a given case for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally."

Our conclusion is that the defendant is liable.

The amount allowed plaintiff by the judgment of the trial court is too small and, since plaintiff has answered the appeal and asked for an increase, we must amend the award.

Plaintiff was shot in the base of his penis and the bullet severed a main artery in his right leg. He narrowly escaped amputation of this leg. He was confined to the Flint-Goodridge Hospital for 18 days at a cost of $60.80. Dr. Rivers Frederick's bill for an operation, which he successfully performed for the salvage of plaintiff's leg, amounted to $200. Dr. Hamilton, of Texas, where the plaintiff subsequently removed and now resides, charged him $40 for treatment. He was laid up for some time and lost considerable wages. While plaintiff, in his petition, claims a large sum because of the impairment of function of his penis and the consequent destruction of all hope of posterity, the medical testimony indicates that he has nothing to fear on this account. For all items of damage, including loss of wages, medical and hospital expenses, and pain and suffering, we will allow $2,000.

For the reasons assigned, the judgment appealed from is amended by increasing the amount awarded plaintiff to $2,000, with legal interest from judicial demand, and, as thus amended, the judgment is affirmed.

Amended and affirmed.