On the night of July 23, 1944, in the City of Baton Rouge, on the first floor of a building owned by Frank de Frances, he and J.S. Brown, H.J. Lynch, H.J. Julian, F.L. LeBlanc and L.W. Laborde were having a card game, and during the course of the game they telephoned the sandwich shop of Harold J. Himel, located at 2850 Florida Street, for sandwiches and Coca Colas to be delivered at the game. At the time Mr. Himel received the order, he had no one to deliver the sandwiches, but agreed to deliver them as soon as he could. Later one of Himel's good friends, namely Homer D. Chisholm, arrived at the sandwich shop with his wife and 8 year old daughter for refreshments, and at that time Himel asked his friend Chisholm if he would do him the favor of delivering sandwiches and Coca Colas to Mr. de Frances and the other card players, Himel knowing that the place of de Frances was on Mr. Chisholm's way home. Chisholm readily agreed to do this for his friend Himel.
According to Chisholm and his wife, after taking the sandwiches from Himel they left to deliver them. He drove to the building of de Frances, which was located at Florida and Margaretta Streets, turned south on Margaretta, stopped the truck in the middle of the street, opposite the side door of the building, got out of his truck with the sandwiches, and rang the door bell and knocked on the door or frame several times without any response. It is shown that this first floor had three rooms and that the first room nearest Florida Avenue was lighted, as was the second or middle room, where the door bell was located, and the third room was dark, and that some one passed from the first room into the second room and to the third room to the rear door to about a distance of eight feet from Chisholm who thereupon addressed him and asked him if he had ordered any sandwiches, but receiving no response, and this party thereupon looked *Page 469 
at Chisholm an instant, turned around and returned to the front room where the card game was going on. After an interval of one or two minutes, plaintiff rang the door bell and knocked again, and not receiving any response, he started back to his truck. On his wife's suggestion he then proceeded towards the window of the room wherein the men were playing cards, close enough to be heard by them, and asked if they had ordered sandwiches, to which question one of the men answered "Yes". He then yelled, "Well, if you want them come out here and get them, and if you don't, I am going to take them back to the cafe." To this remark, according to Chisholm and his wife, one of the card players replied, in rather strong language, that he could take the sandwiches back, to which Chisholm replied, "All right" or "O.K." and walked towards the side entrance on the way to the truck. It appears at that time that the men got up from the card table and proceeded to the side entrance door, cursing Chisholm. He made it to the left-hand side of his truck, remonstrating to the men because of their cursing and advising them of the presence of his wife and baby in the truck. One of the card players, with a stick in his hand, came across the front of the truck and to the side where plaintiff was, stating, "You can't talk to white men like that", to which plaintiff replied that he was a white man as much as they were. Prior to the advancing of this man, one of the men threw a missile at the car, striking the right door about 4 inches below the window. The evidence shows that as Chisholm approached his truck and after the missile had struck his car, he was being pursued by the man with the stick, he made the remark to the effect that if he came any closer, he would shoot him, and as he reached for his flashlight in the car, the man with the stick struck him on the right temple, above the right eye. It appears that plaintiff then got in his truck and drove away and reported the incident to Mr. Himel.
As a result Chisholm filed suit against the six card players for conspiring to commit assault and battery on him, which he claims resulted in damages in the total amount of $10,310, itemized as $5,000 for permanent disfigurement and bodily suffering; $5,000 for pain and suffering; $300 for medical expenses incurred and to be incurred; and $10 for hospital expenses or which he prays for judgment, in solido, against the six defendants.
Defendants appeared and filed an exception of vagueness and indefiniteness, which exception was sustained, and plaintiff was required to amend his petition. The plaintiff thereupon filed a supplemental petition, in which he met the objections of the defendants to his original petition. In the prayer of this supplemental petition he prayed for judgment in his favor and "against the said six defendants", and thereafter named, in the prayer, only five defendants, omitting the name of H.J. Lynch. It appears that citations to all six defendants were issued, and that they were served through their attorneys of record. Before trial H.J. Lynch, one of the six defendants and the one who was not named specifically in the prayer of the supplemental petition, departed this life, leaving a wife and children. After the death of Lynch, the remaining defendants filed exceptions of no cause and of no right of action, and on the same day filed a joint answer, in which they denied the material allegations of the petition, and in the alternative, pleaded that such injuries and damage, if any that plaintiff may have sustained, were due to the fact that plaintiff himself provoked the difficulty by insult, abuse, threats, and other conduct calculated to arouse resentment or fear on such other person's part, and therefore he cannot recover damages from him who assaulted him, the plaintiff.
The exceptions of no cause and of no right of action were based on the fact that in the prayer of the supplemental petition the name of H.J. Lynch was omitted as a defendant. The exceptions were overruled and the case was thereafter set for trial.
When the case was called for trial, the five defendants who had answered announced their readiness to proceed, and plaintiff, with reservation of his rights against the estate of H.J. Lynch, announced his readiness to proceed with the trial. The court at that time did not pass on such reservation. Defendants then entered objection to any and all evidence in order to preserve *Page 470 
their rights under the exceptions of no cause and no right of action, which objection was made general by the Court, and the trial proceeded.
On the merits, the trial judge ruled against plaintiff, stating:
"The burden of proof is on the plaintiff to prove his case by a preponderance of evidence. Although I am satisfied that plaintiff never had any intention of getting in any controversy with the defendants, I am also satisfied that the defendants were not desirous of having any controversy with the plaintiff.
"As the evidence shows, I am of the opinion that this plaintiff was at fault, though unintentionally, in provoking the difficulty, and for the reasons stated in the cases of Finkelstein et al. v. Naihaus et al., La. App., 151 So. 686; Landry v. Himel, La. App., 176 So. 627; Ponthieu v. Coco, La. App., 18 So.2d 351; Fontenelle v. Waguespack, 150 La. 316, 90 So. 662, the plaintiff is not entitled to recover against any of the defendants."
Plaintiff has appealed and defendants have answered the appeal asking that the judgment of the lower court be amended so as to sustain the exceptions of no cause and of no right of action, and as thus amended that the judgment be affirmed, and, in the alternative, that the judgment rejecting plaintiff's demand and dismissing his suit on the merits be affirmed.
Before this Court the defendants contend that the exception of no cause and of no right of action should have been sustained because of the omission of the name of H.J. Lynch in the prayer of the supplemental petition, and also contend that because of this fact, plus the additional fact that plaintiff made no effort to substitute the estate of H.J. Lynch as party defendant after his death, he thereupon gave a release to one of the alleged joint tort-feasors, which resulted in the release of the other tort-feasors.
[1] We see no merits to the contention with reference to the mere omission of the name of Lynch in the prayer. The prayer of the petition calls for citation and service of all six defendants who were all named in the body of the petition, and they were all cited and served, and the naming of such defendants in the prayer thereafter was not sacramental.
[2] As to the second contention that plaintiff in effect gave a release to a joint tort-feasor by failing to make the Lynch heirs parties defendant, we agree with the trial judge that since the evidence clearly shows that Lynch was not in any way guilty of a tort and could not be liable for the alleged assault, there was nothing to release, and there is therefore no merit to the contention of defendants.
On the merits, the evidence is not entirely clear as to exactly what transpired, but we are satisfied that plaintiff did attempt to deliver the sandwiches and Coca Colas at the Margaretta Street side door of Mr. de Frances' building, and that the difficulty probably arose from the fact that de Frances was accustomed to receiving his deliveries at the rear door of his building from Mr. Himel. It is clear, however, that Mr. Chisholm had no knowledge of this and that he attempted to deliver the sandwiches according to the way in which he understood the directions given him by Mr. Himel. Naturally, since he was doing this merely as an accommodation to a friend, after ringing the door bell and knocking for several minutes, he became impatient and became more impatient when he saw one of the men walk through the building and apparently arriving at a point some eight feet from him and looking at him and still not asking for the delivery. Then again when he made a second attempt at the window of the room wherein the men were to deliver the sandwiches, he was in an impatient frame of mind and probably addressed them in a loud and possibly offensive manner, and these men, believing that they were being "sassed" by a colored man, were naturally annoyed and angered. However, when they informed him, in strong language, that he could return the sandwiches to Mr. Himel, he thereupon said "All Right", and turned away, and the incident was closed in so far as the plaintiff was concerned. As a matter of fact, he proceeded directly to his truck with the very apparent idea of returning to Mr. Himel's place. If the card players had dropped the matter then, it would have *Page 471 
been a closed incident and nothing further would have occurred. However, the evidence shows clearly that at least two of the players came out of the room thereafter and that one, Mr. de Frances, threw a brick, which hit plaintiff's truck, and that another, Mr. Laborde, followed him and struck him with a stick as he reached the left side of his truck.
[3] We fully agree with the trial judge when he states that the burden of proof rests with the plaintiff to prove his case by a preponderance of the evidence, and that plaintiff never had any intention of getting into any controversy with the defendants; but we disagree with him in so far as defendant Laborde is concerned, since the evidence shows that Laborde was desirous of a controversy to the point that he followed plaintiff and committed an assault upon him.
[4-6] We further disagree with the trial judge in so far as defendant Laborde is concerned, in that we cannot see that plaintiff was guilty of any conduct which provoked the assault. Prior to the assault plaintiff had retreated from the scene and was either in his truck or about to enter the truck when he was struck by Laborde. If Laborde had remained in the room or on the sidewalk even, and had not followed plaintiff, it is clear that plaintiff would have proceeded with his family and no further trouble would have taken place. Defendants make much of the fact that plaintiff said, or is supposed to have said, that if they came out of the room or if they came closer he would shoot them; but this mere statement, if it was made, is not such a statement as would constitute provocation, because if made under the circumstances, it was clearly made because of fear and an attempted self-defense.
[7, 8] We are convinced, from the record, that the throwing of the brick by de Frances, and the assault by Laborde were unjustifiable, and even had plaintiff been a colored man, as they believed. There is no showing that the throwing of the brick caused any material damage, but the evidence shows that while the injury inflicted on plaintiff by Laborde was slight, still plaintiff did suffer damage as a result thereof. In our opinion the principal item of damage for this assault is for mental anguish, humiliation and mortification, for which we feel that plaintiff is entitled to the sum of $250. In addition thereto we feel that plaintiff should be reimbursed for medical fees in the amount of $21 and for other expense in the amount of $3.75, or a total of $24.75. In so far as the other defendants are concerned, we fail to find any conspiracy on their part to commit this assault on plaintiff. It seems clear that each individual was acting on his own without any conniving between them to do injury to plaintiff.
For these reasons, the judgment appealed from is annulled, reversed and set aside. It is now ordered and decreed that there be judgment in favor of plaintiff, Homer D. Chisholm, and against defendant L.W. Laborde in the sum of $274.75 with legal interest thereon from judicial demand until paid, and all costs in both courts.
It is further ordered and decreed that plaintiff's suit as against defendants Frank de Frances, J.S. Brown, H.J. Julian and F.L. LeBlanc be and the same is hereby dismissed.
 On Application for Rehearing.