**HOPPER v. ROSS.**

No. 1778.

United States District Court,
W. D. Louisiana, Lake Charles Division.

Aug. 23, 1954.

for pain, suffering and physical injuries accredited to the shooting. Defendant admits the blackjacking and the shooting, but interposes a special plea of justification in which he affirmatively alleges:

"That said plaintiff used vulgar and obscene language in the presence of respondent's wife, and when respondent insisted that he leave his premises, the said Emory J. Hopper attacked respondent and his wife, and that in order to protect himself, his wife, his property and his home from serious bodily harm and damage, respondent was compelled to shoot plaintiff."

The case was tried by me without a jury. Plaintiff testified that defendant hit him with a blackjack without any provocation whatsoever; that the blow dazed him and he does not recollect very well what happened after that. Defendant and his wife give the impression that the blackjacking occurred as a result of plaintiff's cursing and of plaintiff's attempting to strike the defendant, and the shots were fired in self defense.

Numerous witnesses testified. There is a lamentable conflict in the evidence. Some say that there was cursing; others did not hear cursing. Some declare that plaintiff acted as if he were intoxicated; others state that he did not so act. The court has carefully reviewed and studied the testimony of each witness. It has endeavored to reconcile conflicts in testimony *wherever possible.*

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. I find the facts specially and state my conclusions of law thereon in this case as follows:

### Findings of Fact.

J. S. Pickett, Many, La., for plaintiff.

W. R. Jackson, Jr., Leesville, La., for defendant.

HUNTER, District Judge.

Emory J. Hopper, plaintiff, was blackjacked, shot, and severely wounded by defendant Ross. Plaintiff seeks recovery

(1) Plaintiff Hopper is a resident and a citizen of the State of New York.

(2) Defendant Ross is a resident and citizen of the State of Louisiana.

(3) The amount in actual controversy is in excess of $3,000.

(4) At the time of the shooting plaintiff was 33 years of age and was serving

in the United States Army and stationed at Camp Polk, Louisiana.

(5) Plaintiff and defendant were in good health at the time of the shooting.

(6) Plaintiff had been drinking previous to the shooting but was not drunk and was in control of his senses.

(7) On the day of the shooting, plaintiff, in the company of his wife and a soldier friend, was driving in his car from Leesville to Many, Louisiana. The car developed fan belt trouble. Plaintiff stopped the car at defendant's service station-store-cafe business in Anacoco, Louisiana, to purchase a new fan belt. An employee of the defendant assisted plaintiff in trying to find a fan belt that would fit. Having tried a number of fan belts and failing to find a usable one, plaintiff entered the store.

(8) As plaintiff entered the store, he immediately engaged in an argument with Ross about the fan belts. The argument became heated. Hopper wanted Ross to hand over another belt. Ross, apparently exasperated with dealing with a customer whom he considered to be irksome, informed Hopper that all of the belts were alike and if the ones tried did not fit, the others would not fit either. Ross suggested that Hopper leave the store and go down to the next station. Eva Newsom, defendant's witness, was at the cash register to check out. She placed her purchases on a table by the cash register. Hopper rushed up and said to Ross, "I am going to take one of them fan belts up there anyhow." Ross replied, "No, you can't do that." Hopper then placed both of his greasy hands on the cloth which was lying on the counter. Ross ordered him to get his dirty hands off the cloth. Hopper cursed Ross, calling him a "dirty son of a bitch." At this time Ross's wife was present, as well as other lady customers. This was the extent of the abusive language and cursing prior to the blackjacking.

(9) Ross pulled out an 18-inch M. P. blackjack and struck Hopper over the left eye. The blow was a hard one and plaintiff still bears the scar.

(10) When plaintiff was so struck with the blackjack, he was not armed and had made no threatening act towards Ross or any one else. Under the circumstances, Ross had no right to assume that Hopper would attempt a physical attack upon him. The use of the blackjack was the use of excessive force and was not necessary.

(11) The blackjack blow staggered plaintiff and temporarily deranged him so that his subsequent actions were the actions of a stunned and delirious man whose mind had been temporarily deranged by the blow of the blackjack.

(12) Hopper, dazed and delirious, reeled back, then advanced on Ross, cursing him, threatening his life and using profane language.

(13) There then occurred an actual scuffle between plaintiff and defendant, at which time plaintiff did have in his hand a very small screw driver.

(14) Ross was frightened. He pushed Hopper back, and as he says, he wanted to keep Hopper back because Hopper looked like he had plenty of fight in him, and Ross was afraid Hopper would reach and get a knife or a meat cleaver, which were in the immediate proximity of the scuffle.[1]

(15) Ross first fired between Hopper's legs into the floor but as Hopper continued to advance towards him, he shot him in the stomach. At the time of the shooting Hopper was ten to twelve feet away from Ross but was advancing upon him, cursing him and saying "I am going to kill you."

(16) Plaintiff was seriously injured as a result of the shooting and was in a critical condition for several months. The wound caused perforations of the anterior abdominal wall, and also perfo-

---

1. Ross's own words were: "I shoved him off and there was a butcher knife there in the meat shop and I didn't know but what he might make for that. He had a little screw driver in his hands and I was trying to back him away from those knives. I didn't want to hurt him but I had no choice so I shot him."

rations in the lower bowel. Both litigants are, indeed, most fortunate that death did not result.

(17) As a result of the shooting, the plaintiff is now drawing seventy-five percent disability from the United States Army. The plaintiff has suffered severe pain as a result of the shooting and there is no question but that he has suffered some partial disability. He was hospitalized and completely bedridden for over two months.

### Discussion of the Law.

■ Article 2315 of the Louisiana LSA–Civil Code, which forms the basis of plaintiff's complaint, provides that "every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it". This means that if Hopper is to prevail in this action, he must prove:

(a) That there was an act.

(b) That the act was done by Ross.

(c) That this act by Ross caused Hopper's damage.

(d) That the damage was occasioned by Ross's fault.

Applying these tests to this case, it is apparent that there was an act, done by Ross, which caused Hopper's damage. There remains the critical question of whether the damage was occasioned by the fault of Ross. Accordingly, let us consider the situation in which these two parties were participants.

■ The "aggressor doctrine" is well established here. It is to the effect that one who provokes a difficulty with another cannot recover damages for injuries inflicted upon him as a result thereof, even though the conduct of the one who inflicts the injuries was not justified in law.[2] Virtually every case on the subject of assault and provocation cites this rule.

■ It is argued on behalf of Ross that Hopper was the aggressor and that his actions were such that justified Ross striking him with a blackjack and subsequently shooting him. This argument is fully answered by the general rule in Louisiana, to the effect that the use of mere words, no matter how calculated the words are to incite and irritate, do not present a defense to a suit for assault and battery, although they may serve in mitigation of damages.[3] The courts, in these cases, cite the aggressor rule, *but allow recovery on the theory that the use of words alone cannot constitute aggression.* The rule is based on sound morals and public policy which, as has been said, forbids any man to be his own "judge and executioner." But, review of jurisprudence reveals that certain Louisiana appellate courts have held that provocative words under certain circumstances may constitute a threat of physical violence, and in those cases have applied the aggressor rule.[4] We find this principle enunciated in the case of Smith v. Parker, La.App., 59 So.2d 718, 721:

**2.** Lide v. Parker, 6 La.App. 648; Vernon v. Bankston, 28 La.Ann. 710; Johns v. Brinker, 30 La.Ann. 241; Bankston v. Folks, 38 La.Ann. 267; Miller v. Meche, 111 La. 143, 35 So. 491; Massett v. Keff, 116 La. 1107, 41 So. 330; Bonneval v. American Coffee Co., 127 La. 57, 53 So. 426; Fontenelle v. Waguespack, 150 La. 316, 90 So. 662; Oakes v. H. Weil Baking Company, 174 La. 770, 141 So. 456; Finkelstein v. Naihaus, La.App., 151 So. 686; Walsh v. Schriner, La.App., 168 So. 345; Esnault v. Richard, La.App., 53 So. 2d 494; Smith v. Parker, La.App., 59 So. 2d 718; Brown v. Lambert, La.App., 71 So.2d 410.

**3.** Richardson v. Zuntz, 1876, 26 La.Ann. 313; Munday v. Landry, 1899, 51 La. Ann. 303, 25 So. 66; Bernard v. Kelley,

1907, 118 La. 132, 42 So. 723; Harvey v. Harvey, 1909, 124 La. 595, 50 So. 592; Bonneval v. American Coffee Co., 1910, 127 La. 57, 53 So. 426; Burnecke v. O'Neal, 1916, 139 La. 208, 71 So. 395; Oakes v. H. Weil Baking Co., 1932, 174 La. 770, 141 So. 456; LaFleur v. Dupre, 1924, 1 La.App. 230; Guillory v. Fontenot, 1925, 2 La.App. 189; Holmes v. Warren, 1930, 12 La.App. 399, 126 So. 259; Rainey v. Miano, 1931, 17 La.App. 137, 134 So. 757; Conley v. Travelers Insurance Co., La.App., 1952, 53 So.2d 681; Beaucoudray v. Hirsch, La.App., 1951, 49 So.2d 770.

**4.** Finkelstein v. Naihaus, La.App., 1933, 151 So. 686; Walsh v. Schriner, La.App., 1936, 168 So. 345; Landry v. Himel, La. App., 1937, 176 So. 627, 629; Gross v.

"We think, after a consideration of all of the cases, that the Louisiana rule is that provocative words may be pointed to as justification for an assault provided those words were such that under the circumstances it should have been assumed that physical retaliation would be attempted."

Hard cases have brought about this exception to the general rule. Parker is typical. There, a Negro woman cursed a white man. The white man slapped her with his right hand and kicked her in the buttocks. The colored woman filed suit. Defendants asked for and received a jury trial. The jury found in favor of defendant. The court refused to upset the jury verdict. It is noteworthy that the identical court, in Conley v. Travelers Insurance Co., La.App., 53 So.2d 681, 683, a short time before declared:

"Concededly plaintiff was guilty of using harsh, derogatory, opprobrious and profane language towards Barnette, but we think *it is well established that mere words, unaccompanied by any physical act or even by a threat of physical violence, are insufficient to be construed as provocation justifying a physical attack.*" (Emphasis supplied.)

Parker and cases cited in Note (4) appear to clash with the general rule. But, as we view it, it is immaterial, because we have found as a fact that Hopper had no right to assume that a physical assault would be made on him.

▉▉▉▉ There is an additional and more compelling reason why plaintiff should prevail. Let us assume that Ross was not obliged to tolerate a man calling him a "son of a bitch." Let us concede that if you call a man such a name that the man so called has a right to hit the caller. But under such circumstances would it entitle a man to shoot the caller, to stab him, or to blackjack him? Certainly Ross used more force than was necessary in striking Hopper, a smaller man, a staggering blow with a blackjack. In the Roman law from which we have developed our aggressor doctrine we find this statement of the famous Ulpian:

"Where, however, anyone kills another who is attacking him with a weapon, he is not held to have killed him unlawfully; and where anyone kills a thief through fear of death, there is no doubt that he is not liable under the Lex Aquilia. *But if he is able to seize him, and prefers to kill him, the better opinion is that he commits an unlawful act, and therefore* he will also be liable under the Lex Cornelia." [5]

The settled jurisprudence of the State of Louisiana is in accord with this principle. A person defending himself from an attack becomes liable as an aggressor where the force employed is in excess of that needed for defensive purposes and for the use of such excessive force he is liable both civilly and criminally.[6] The use of the blackjack by Ross was the use of an excessive force and an unnecessary force. If the injuries complained of had been inflicted during an attempted ejection, the rule invoked by defendant might perhaps be applicable. But such is not the case here. When defendant used the blackjack, he became the aggressor in this affray and is therefore liable in damages.

Defendant's counsel, in their very excellent brief, discuss at length the occur-

Great Atlantic & Pacific Tea Co., La. App., 1946, 25 So.2d 837.

5. 21 Tulane Law Review 367 (See footnote 11).

6. Oakes v. H. Weil Baking Co., 1932, 174 La. 770, 141 So. 456; Randall v. Ridgley, La.App.1939, 185 So. 632; Bacas v. Laswell, La.App.1945, 22 So.2d 591; Newman v. Southern Kraft, La.App.1940, 197 So. 197; McCurdy v. City Cab Co., La.App., 1947, 32 So.2d 720; Stoehr v. Payne, 1913, 132 La. 213, 61 So. 206, 44 L.R.A.,N.S., 604; Conley v. Travelers Insurance Co., 53 So.2d 681; Antley v. Davis, La.App., 199 So. 450; Ford v. Williams, La.App.1953, 62 So.2d 838, 840, where the court said: "It is fundamental law that a person can only use reasonable force in repelling an invasion of his person, and it is clear that, even though we were to assume that petitioner was the aggressor, an unreasonable amount of force was used by defendant".

rences subsequent to the blackjack episode. These events are immaterial, because Ross had already become the aggressor. Besides, it was Ross's blow that caused Hopper's temporary mental derangement, and Ross, not Hopper, was responsible for this.[7]

#### Conclusions of Law.

 (1) The court has jurisdiction of the parties and the subject matter under the diversity statute, 28 U.S.C.A. § 1332.

(2) The law to be applied in this case is the law of Louisiana, Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

(3) One who provokes a difficulty with another cannot recover damages for injuries inflicted upon him as a result thereof, even though the conduct of the one who inflicts the injuries was not justified in law.

(4) The general rule in Louisiana is that mere words, unaccompanied by any physical act or even by a threat of physical violence are insufficient to be construed as provocation justifying a physical attack. *The use of mere words, no matter how severe, does not constitute aggression.*

(5) Certain Louisiana appellate courts' decisions hold that words may make one the aggressor, provided the words were such that under the circumstances it should have been assumed that the user of the words would attempt physical retaliation. Here, defendant had no right to assume that physical retaliation would be attempted. Therefore, those decisions are not applicable.

(6) A person allegedly defending himself becomes liable as an aggressor where the force employed by him is in excess of that needed for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally. Where one person deliberately strikes another with a blackjack as a result of the other's verbal abuse, the force employed is in excess of that which the law will tolerate.

#### Conclusion.

Considering the law and the evidence, we think an award of $5,000, covering pain and suffering (past, present, and future) would be reasonable, and an additional amount of $5,000 for disability and loss of earnings would be commensurate with the loss shown.

A decree may be entered accordingly.

---

7. Restatement Law of Torts—Sec. 455 Lynch v. Fisher, La.App., 1947, 34 So.2d 513.