REGAN, Judge.
Plaintiff, William H. Mecom, instituted this suit against the defendant, Nolan A. Marshall, endeavoring to recover the sum of $5,000 for personal injuries incurred on March 3, 1950, at about the hour of 9:15 a. m. as a result of an assault and battery committed upon him by the defendant.
Defendant answered and conceded that an altercation occurred between plaintiff and himself but denied liability for any injury resulting therefrom on the ground that plaintiff, having provoked the conflict with defendant, cannot recover damages for injuries inflicted upon him as a result of the battery, even though the conduct of the defendant was not justified in law.
From a judgment in favor of plaintiff in the sum of $750, defendant prosecutes this appeal. Plaintiff has answered the appeal and requested that the judgment of the court, a qua, be amended by having it increased to the sum of $2500, and as thus amended it be affirmed.
The record reveals that the plaintiff, at the time the assault and battery was committed upon him, was approximately forty years of age, five feet, nine and one-half inches tall and weighed 170 pounds and that defendant was approximately twenty-six years of age, six feet, one and three-quarter inches- tall and weighed 164 pounds.
On the morning of the altercation both plaintiff and defendant were operating their automobiles and their destination, although neither party was aware of the other’s objective, was “Ansardi’s Parking Lot” located in the 1200 block of Tulane Avenue, which was rather close to their respective offices. Plaintiff was employed by the Free-port Sulphur Company, whose offices are located in the American Bank Building, and defendant was employed by Maurice Sackett, Photographer, whose offices are located in 300 S. Rampart Street. While endeavoring to reach Ansardi’s parking area the vehicles of both litigants became involved in a congestion of automotive traffic and defendant’s vehicle very nearly collided with plaintiff’s vehicle; this incident exasperated plaintiff sufficiently to cause him to spontaneously yell a derogatory remark relative to his driving which defendant did not hear and which vocal outburst caused him to merely “laugh”. In any event, plaintiff arrived at the parking area first, stepped out of his car, proceeded to the office, paid his parking fee and was walking away therefrom when, according to his own testimony, he observed the defendant walking in his general direction, which was also the direction of the office, he hesitated and then began to walk towards the defendant; as they approached each other he remarked “what do you want, haven’t you done enough for one morning”, to which defendant responded “I just want to tell you that I have as much right on the streets as you have.” According to the plaintiff several additional remarks were exchanged between him and defendant, at which time plaintiff asserted that he walked towards defendant and said “you can’t talk to me like that” and when he moved to within five or six feet of defendant, defendant responded, “Go on and shut your mouth” and plaintiff replied “I am not going to do it”; at which crucial moment he ceased walking and defendant “let me have it with the milk bottle”. “He threw it” and it struck me “in the face.” Plaintiff emphatically denies that he ever attempted to strike the defendant. The record further reflects that defendant suffered with tuberculosis which had initially manifested itself while. he was in the service of the United States Marine Corps and for which condition he was receiving constant treatment from the Veterans Hospital and, therefore, each day he brought his lunch to work, which usually consisted of a quart of milk and prepared sandwiches.
Defendant, in his effort to resist plaintiff’s suit, testified that he had been accustomed to parking in “Ansardi’s Lot” *517 over a period of several months 'and when he saw plaintiff enter this parking area, he remained in his vehicle a “good fifty feet behind”; he observed plaintiff walk from his car to the office to" pay his parking fee and he continued “talking to the fellows on the lot, trying to give Mr. Mecom, (plaintiff) ample time to get out of the lot because I saw the manner in which he was speaking”; after plaintiff had walked ten or twelve feet away from the office and apparently intended to leave the parking area, defendant then began walking in the direction of the office to pay his parking fee; at this critical moment plaintiff, upon observing defendant’s approach, hesitated, then ’ reversed his movement and belligerently ■ strode towards defendant, however, defendant continued to walk in the direction of the office; upon arriving there defendant asserted that plaintiff “put his finger in my face * * * arid said boy, I hope I catch you in just such a position so I can ram the so and so out of you”. Defendant related that he “laughed again” and remarked “I hope you get me in that position again” and proceeded to walk off, at which time plaintiff struck him in the face; he then hacked up against the cars that were parked therein and plaintiff strove to strike him with the other hand; at this tense moment defendant struck plaintiff in the face or over the head with the quart milk bottle.
It will be recalled that plaintiff insisted that when he was five or six feet removed from defendant the milk bottle was thrown in his face, causing the bottle to shatter and severely lacerate his left cheek and eyelid. Defendant, on the other hand, maintains that he retained the milk bottle in his hand and only struck plaintiff with it after plaintiff had punched him in the face. Defendant supports his version of this factual dispute by pointing out that his clothes were splashed with milk— whereas if he had “thrown” the bottle a distance of five or six feet he, in all probability, would not have been spattered with milk.
The only question posed for our consideration by virtue of the foregoing revelation is one of fact and that is whether defendant committed an unprovoked assault and battery upon the plaintiff.
The trial judge, by virtue of the judgment rendered herein in favor of plaintiff, was obviously of the opinion that the assault and battery committed upon the defendant was without provocation, however, our careful review of .the record reflects error in his factual conclusion.
The only witnesses to testify as to the occurrence of the tiff in addition to the litigants were two of the attendants employed by the parking lot, Wilbert Augustine and Elbert Harris, who testified on behalf of defendant. Harris stated that he failed to see the actual occurrence of the altercation since he was “parking” plaintiff’s car, however, Augustine, in the essential aspects of the squabble, substantially corroborated the defendant’s version thereof. However, discounting for the moment the. favorable testimony of defendant and these two witnesses, and relying only on the authenticity of plaintiff’s version of the incident, we are .compelled tp conclude that he provoked the spat and this is partially revealed by the following testimony:
“Q. It was after you paid your fee that you put your top coat on? A. Yes, sir. I turned away going to walk to my left to the American Bank Building. As I turned away arid walked 5 or 6 feet, steps, 'I saw him getting out of the car. I kept .on. walking and he slaihmed the door and started walking toward me. It was ..obvious because I had stepped away from the pay booth there. He walked up to me and I said, what do you want, haven’t you done enough for one morning? He said, I just want to., tell you that I have as much right on the streets as you have. I asked-him why the hell don’t you drive like you have that right? He said, just go on up the street and shut your mouth. I started toward him and said, you can’t talk to me like that. When I got to within 2 good (5 or 6 feet) steps away he said, go on and shut your mouth, and I told him I wasn’t going ; *518 to do it. I stopped about that time and he left me have it with the milk bottle.”
We are further unfavorably impressed with the factual picture created by virtue of plaintiff’s testimony, both on direct and cross-examination, which reveals that he was deeply embittered, intolerably angry and prepared to foment trouble from the time that his and defendant’s cars met in Tulane Avenue and Loyola Street and this belligerent state of mind continued up to the very psychological moment that he galvanized and provoked the battery as is reflected by the following testimony elicited from plaintiff:
“Q. And you stood there braced for trouble ? A. I was.
“Q. And you were a little aggravated at this time? A. Yes, sir.
“Q. You were quite upset? A. I was aggravated.
* * * * * *
“Q. You deny that you struck Marshall at least two times ? A. I do.
“Q. However, you were angry? A. I was disturbed.
“Q. You were upset? A. Yes, sir.
“Q. You stood your ground waiting for Marshall to come in your direction? A. Yes, sir.
“Q. And you walked in his direction? A. Yes, sir.”
Plaintiff admits that after paying his parking fee he had walked five or six feet in the direction of Baronne Street when he first saw Marshall approximately twenty-one and one-half feet away. He then reversed his movements and walked in the direction from which Marshall was approaching, admittedly “aggravated” and “agitated”. On the other hand, up to this time, defendant had disregarded plaintiff’s spontaneous overflow of powerful emotions. In fact, he waited for plaintiff to complete his parking arrangements before he begán to walk up to the office and at no time prior thereto had he displayed or manifested any evidence of anger directed at plaixitiff. We reiterate, the factual picture painted by the actions of both these litigants, together with the only corroborating evidence in the record, which was elicited on behalf of defendant, supports defendant’s version of the altercation, to-wit: that plaintiff struck and attempted to strike him one or more times before defendant ultimately struck plaintiff either in the face or over the head with the quart bottle of milk.
Having acted under a hopeless archaic sociological concept or a method of thinking, which in a measure induced this conflict, the immaculate conception of justice is valiantly served when plaintiff is not permitted to recover damages resulting from an incident which he needlessly provoked.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of defendant dismissing plaintiff’s suit at his cost.
Reversed.