ELLIS, Judge.
Plaintiff filed this suit for damages for physical injuries suffered as the result of an alleged assault and battery committed upon him by the defendant. Plaintiff alleged that he did nothing “to cause the beating; gave him no cause or provocation of any kind and committed no negligent act of any kind to cause these injuries.”
■ Defendant denied each and every allegation- of plaintiff’s petition and defended the suit upon the ground that plaintiff instigated and provoked the altercation, and that while defendant admitted striking the plaintiff twice, he did -this only after an attempt .by the plaintiff had been made to strike him.
After trial there was judgment in favor of the plaintiff for special damages of $223.05 for' medical, doctor and hospital bill and an additional award of $500 for the physical injuries, damages, pain and suffering.
From this judgment the defendant appealed and the plaintiff answered the appeal asking that it be increased to the sum of $5,000 plus all special damages and interest on all sums’ at the legal rate from the date of judicial demand until paid and ■all costs.
This court Has considered on many occasions-similar cases. It-has been repeatedly held by the courts of this State that as a general rule in this class of cases that a. plaintiff can recover in an action for an assault, and battery comjnitted without legal-excuse ¡unless he provoked the difficulty by conduct calculated to arouse the resentment or fears of the defendant, and the Courts have also held that whether said person assaulted provoked the difficulty so-as to be precluded from damages inflicted upon him depends upon the peculiar facts of the case. Bonneval v. Amer *69 ican Coffee Co., 127 La. 57, 53 So. 426; Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456; Guillory v. Fontenot, 2 La.App. 189; Graham v. McCrory, 8 La.App. 22; Herrington v. Magee, 15 La.App. 183, 131 So. 490; Newsom v. Starns, La.App., 142 So. 704; Finkelstein v. Naihaus, La.App., 151 So. 686; Jumonville v. Frey’s, Inc., La.App., 173 So. 227; Landry v. Himel, La.App., 176 So. 627; Betz v. Teche Lines, La.App., 7 So.2d 656; Sheppard v. Causey, La.App., 8 So.2d 86; Aetna Casualty & Surety Co. v. Cazebon, La.App., 11 So.2d 118; Manuel v. Ardoin, La.App., 16 So.2d 72; McCurdy v. City Cab Co., La.App., 32 So.2d 720; Ogden v. Thomas, La.App., 41 So.2d 717; Hartfield v. Thomas, La.App., 45 So.2d 216; Smith v. Clemmons, La.App., 48 So.2d 813; Mecom v. Marshall, La.App., 64 So.2d 515; Smith v. Bankston, La.App., 75 So.2d 880; Allison v. Ivy, La.App., 85 So.2d 332.
It appears from the record that on January 1, 1954 that the plaintiff in company with Clifton Turner, left his home and was going out Terrace Street in the City of Baton Rouge, and that he met- a bunch of children skating on the sidewalk. Among them was one of his neighbor’s children, Johnnie Lee Harris, who at the time was approximately 12 years of age, and following this child was Freida Jackson, the young daughter of the defendant, Henry Jackson, Jr. There does not seem to be any doubt from the testimony that the plaintiff either pushed or hit both of these girls. The plaintiff and his companion, Turner, contend that he merely pushed them in order to keep them from skating on his feet, whereas, the two young girls testified positively that he hit them .as he passed by. The Harris girl stated that he objected to the children skating in front of his house and had told her on that date,not to skate there, and that she had gone home and removed her skates but when she saw this group of children among whom was .defendant’s daughter, skating, she put her skates back on and went with them. As a result of. the push or the hitting by the plaintiff, both girls were crying, ■ and the Harris girl’s brother, who was 'approximately 16 years of age, went in and got a Scout ax but was persuaded not to attempt to use it by Turner. The defendant’s daughter went to her home and told her father that the plaintiff had hit her, and she was crying at the time.
, The defendant, who was at home looking at TV on New Year’s day, put on his shoes and went out to look for- the defendant, whom he did not know, and had never seen. It is shown by the record that plaintiff and defendant were unacquainted with each other. After proceeding several blocks, the children pointed out the plaintiff as the man who had hit them. At the time that defendant came up to the plaintiff, Turner had left.
The plaintiff testified that the defendant came up to his back, jerked him around and “busted” him in the mouth and body, knocking him down and then kicked him, rendering him unconscious. The defendant’s version is to the effect that when his daughter told him that a man had hit her he was angry and. that he immediately .left to find the man to ask him why he had. done it, and when he found the plaintiff that -the latter would pay him no attention but kept walking away from him, and would give him no answer, and that after once or twice failing to . get the plaintiff’s attention or an answer as to why he had hit his daughter, he .touched him on the arm, either once or twice, and that the plaintiff, without .saying anything, turned and- swung with the right hand to strike the defendant.
.. The Learned-Judge of the District.Court accepted the version of the plaintiff, however,- in his -written reason he makes no mention of the testimony .of two disinterested eyewitnesses to the actual affray. As previously stated, there is no doubt that the record shows that plaintiff either pushed or hit the defendant’s daughter so as to make her cry, as well as a neighbor’s'child, evidently causing quite a disturbance among *70 the children who were skating, and such an occurrence would be most provoking to any parent, and the defendant did what any parent under like facts and circumstances would have done, that is, to go out and find out if and why his child had been struck.
Joe Carmena was produced as a witness on behalf of the defendant and it is shown that he was an actual eyewitness and his testimony corroborates the defendant’s version. He states that the defendant attempted to find out from the plaintiff why he had hit his daughter and the plaintiff ignored him, whereupon the defendant touched the plaintiff on the arm once or twice, still in an attempt to get an explanation or some statement from the plaintiff about the matter, and that the plaintiff turned and swung at the defendant, at which time the defendant, who had been a prize fighter but had been retired since 1942, blocked the right swing with his left arm and struck the plaintiff twice with his left fist. It is true that plaintiff suffered four fractured ribs and some time later on claimed that he lost four teeth as the result of the blow to his body by the defendant, but the District Judge did not attribute the loss of the teeth to the blow. Carmena also testified that the plaintiff fell against the curbing of the pavement and that the defendant immediately picked his head up off the pavement and asked a white woman sitting in her yard, who had moved from the vicinity at the time of the trial,' to call a doctor. There is no evidence other than that of the plaintiff that the defendant kicked him.
In addition to the corroboration of the defendant’s version of the actual fight, there was a woman by the name of Elizabeth Drakes sitting in her automobile whose testimony in the main corroborates that of the defendant to the effect that the plaintiff swung first at the defendant who blocked the blow and retaliated by striking plaintiff twice, and knocking him down and unconscious.
The names of the witnesses Carmena and Drakes were given to the defendant by a white man who was in the insurance business and had an office in the Triad Building in Baton Rouge who evidently also witnessed the affray but who, the record shows had left town and could not be located as a witness at the trial. Carmena was acquainted with the defendant, however, the Drakes woman was not. Their testimony is stamped with truthfulness in that they knew too many unimportant proven details to be committing perjury.
The record shows that the defendant was approximately 37 years of age, weighted 176 pounds and was about 5 feet 9 inches tall, whereas the plaintiff was 61 years of age, weighted 195 pounds and was approximately 6 feet tall. It is also shown that the plaintiff and defendant were not acquainted and defendant testified that although he did not notice the age of the plaintiff at the time he was attempting to question him, that he had on a cap which concealed his grey hairs, otherwise when he saw his grey hairs he would not have hit him twice, although plaintiff was attempting to strike him.
The witnesses for the plaintiff who knew the defendant testified that they had never known him to jump on anybody and it is not shown that he ever had any trouble with anyone other than an altercation with his wife at their home, whereas the record shows that the plaintiff had been charged with minor offenses such as disturbing the peace and assault and battery, and that he drank at times. Plaintiff testified, however, that he “did not drink on holidays.”
After a careful consideration of the efitire record and the briefs of able counsel herein, we believe that the plaintiff’s unwarranted pushing or hitting of defendant’s young daughter was sufficient provocation to justify the defendant looking up the plaintiff in order to find out why he had done such a thing, and whether the defendant was angry or not, according to his version and the version of the two eye *71 witnesses, he did nothing more than touch the plaintiff in an effort to stop him and get an explanation of the quarrel until after the plaintiff himself, according to the preponderance of the testimony, had tried to strike him, whereupon he warded off the blow and only used sufficient force to repulse the attack.
It is argued by counsel for plaintiff that the defendant became guilty of battery upon the plaintiff when he touched him on the arm in an attempt to get the plaintiff to stop and give him an explanation. This touching of the plaintiff by the defendant was not a battery in its true sense. There was no intent to inflict any bodily harm in connection with the touching.
The facts in this case are different from those found by this Court in Broussard v. Citizen, 44 So.2d 347, relied upon by the plaintiff. We agree with counsel for defendant that the case of Allison v. Ivy, supra [85 So.2d 333], is factually similar to the present case. In that case our brethren of the Second Circuit, after stating the general rule, said:
“However, the courts have found sufficient fault on the part of plaintiff to bar his recovery where he struck or attempted to strike the first blow. See: L.S.A.-C.C. art. 2315; Hopper v. Ross, D.C., 123 F.Supp. 371; Ogden v. Thomas, La.App.1949, 41 So.2d 717; Hartfield v. Thomas, La.App.1950, 45 So.2d 216; Esnault v. Richard, La.App.1951, 53 So.2d 494; Ashley v. Baggett, La.App.1951, 53 So.2d 678; Smith v. Parker, La.App.1952, 59 So.2d 718; Gordon v. Pittman, La.App.1952, 61 So.2d 609; Mecom v. Marshall, La.App.1953, 64 So.2d 515; Brown v. Lambert, La.App.1954, 71 So.2d 410; Robertson v. Palmer, La.App.1954, 74 So.2d 408; and Smith v. Bankston, La.App.1954, 75 So.2d 880.”
While we are loath to disagree with the conclusion reached and judgment awarded by the Court below, we believe that the defendant’s version was corroborated by the two eyewitnesses to the quarrel and we find no reason from the record to disbelieve these witnesses nor was any reason stated by the Court below as to why such testimony was not accepted. Where no reason can be found from the record for disbelieving a witness and none is pointed out by the Court below, we must accept such testimony.
For the above and foregoing reasons, the judgment of the District Court is reversed and plaintiff’s suit dismissed at his cost.